**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAWRENCE DIGIESI,<br><br>　　　　Plaintiff,<br><br>v.<br><br>TOWNSHIP OF BRIDGEWATER POLICE DEPARTMENT, et al.,<br><br>　　　　Defendants. | Civil Action No. 19-14557 (GC) (JBD)<br><br>**OPINION** |

**CASTNER, U.S.D.J.**

**THIS MATTER** comes before the Court upon two Motions to Dismiss or for Summary Judgment. (ECF Nos. 124 & 128.) Defendants Bridgewater Township and the Bridgewater Township Police Department move pursuant to Federal Rules of Civil Procedure (Rule) 12(b)(6) and 56. (ECF No. 124-2.) Defendants Thomas Rice, Thomas Kochanski, Peter Ochs, Steve Zeichner, John Mitzak, and Sean O'Neill move pursuant to Rule 56. (ECF No. 128-1.) Plaintiff Lawrence DiGiesi opposed, and Bridgewater Township and the Police Department replied. (ECF Nos. 130 & 132.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' motions are **GRANTED** in part and **DENIED** in part. Specifically, Plaintiff's federal claims under 42 U.S.C. § 1983 are dismissed with prejudice as time-barred. Because the Court declines to exercise supplemental jurisdiction, the remaining state-law claims are dismissed without prejudice.

# I. BACKGROUND

## A. PROCEDURAL BACKGROUND

This case was initiated on July 1, 2019. (ECF No. 1.) The basis for federal subject-matter jurisdiction is federal question jurisdiction stemming from alleged constitutional violations. (ECF No. 121 ¶ 27.)

Plaintiff Lawrence DiGiesi sued Bridgewater Township, the Bridgewater Township Police Department (BTPD), and thirteen individuals (Alfred Nicaretta, Kenneth J. Dolida, Tom Rice, Joe Bones, Thomas Kochanski, A. Mele, Peter Ochs, Michael Maxwell, Steve Zeichner, John Mitzak, Shawn O'Neill, Paul Payne, and Michael Packwood) in their official and individual capacities. (*See generally* ECF No. 121.) Plaintiff alleges that Defendants engaged in an "orchestrated effort" to falsely arrest and prosecute him after Plaintiff, then a security guard at the Green Knoll Grill in Bridgewater, New Jersey, was involved in an altercation with a patron who was the son of a retired BTPD police officer. (*Id.* ¶¶ 2, 28, 31, 44.)

Plaintiff asserts eight causes of action against all Defendants: Count One for deprivation of due process rights as protected by the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983; Count Two under the New Jersey Tort Claims Act for negligence; Count Three for malicious abuse of legal process; Count Four for malicious prosecution; Count Five for violations of Plaintiff's constitutional rights by falsely, wrongfully detaining and arresting him; Count Six for defamatory injury to reputation; Count Seven for aiding the commission of tort by concert of action; and Count Eight for conspiracy to commit tort. (*Id.* ¶¶ 60-111.) Count Nine is for municipal liability against only Bridgewater Township. (*Id.* ¶¶ 112-119.)

Six of the individual Defendants—Nicaretta, Bones, Mele, Maxwell, Packwood, and Payne—were dismissed by stipulation in February 2021. (ECF No. 79.) The remaining individual Defendants are members or former members of BTPD: Officer Kochanski; Lieutenant Mitzak;

Detective Ochs; Lieutenant O'Neill; Sergeant Rice; Detective Zeichner; and Kenneth Dolida, retired Officer.[1]  (ECF No. 121 ¶¶ 13-14, 16, 18, 20-22.)

On July 18, 2023, Defendants Bridgewater and BTPD moved to dismiss or for summary judgment.  (ECF No. 124.)  On August 29, Defendants Kochanski, Mitzak, Ochs, O'Neill, Rice, and Zeichner moved for summary judgment.  (ECF No. 128.)  Plaintiff filed a single opposition to both motions on September 29.  (ECF No. 130.)  Bridgewater and BTPD replied on October 13.  (ECF No. 132.)

### B. FACTUAL BACKGROUND

On March 13, 2016, Michael Dolida and his fiancée, Melissa DeBlasio, were celebrating Ms. DeBlasio's birthday at the Green Knoll Grill.  (ECF No. 121 ¶ 31.)  Plaintiff was a security guard on duty that evening.  (*Id.*)

Plaintiff claims that after a back-and-forth, "Mr. Dolida came at Plaintiff and intentionally met Plaintiff with an elbow and forearm to Plaintiff's face and neck, causing Plaintiff to react and deflect Mr. Dolida's elbow and forearm and simultaneously guiding Mr. Dolida away." (ECF No. 130 at 19.[2])  As a result, Mr. Dolida "trip[ped] upon a Belgium Block curb and then fell to the ground."  (*Id.*)

Defendants claim that upon investigating the incident, they were informed that Plaintiff had yelled at Mr. Dolida and Ms. DeBlasio "about where they had parked and entered." (ECF No. 128-2 at 1-2; ECF No. 124-3 at 1-2.)  When Mr. Dolida argued back, Plaintiff "suddenly came

---

[1]   Despite a summons allegedly being served, the Court understands that Kenneth Dolida is not represented and has not appeared in the case.  (ECF No. 7.)

[2]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

3

down stairs from the premises and pushed [Mr. Dolida] causing him to step back onto the curb and injure his ankle." (*Id.*)

Ultimately, an investigation by the BTPD led the Somerset County Prosecutor's Office to authorize criminal charges against Plaintiff. On July 27, 2016, Plaintiff was charged with a violation of N.J. Stat. Ann. § 2C:12-1B(7). (ECF No. 128-4 at 57.) On September 22, the Somerset County grand jury returned a one-count indictment for third-degree aggravated assault. (ECF No. 128-7 at 4.)

In June 2017, a bench trial was held in the Superior Court of New Jersey, Law Division, Criminal Part, Somerset County. (ECF No. 128-6 at 6-192.) On June 6, at the conclusion of the two-day trial, Plaintiff was acquitted. (*Id.* at 191.) The court found that the State had not "met its burden to prove beyond a reasonable doubt that [Plaintiff] committed third[-]degree aggravated assault, nor the lesser included offenses," and Plaintiff was therefore "not guilty of the top offense, and the lesser included offenses." (*Id.*) This civil litigation ensued.

## II.     LEGAL STANDARD

### A. FAILURE TO STATE A CLAIM—RULE 12(B)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations, courts

4

"disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

### B. SUMMARY JUDGMENT—RULE 56

"Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011). Pursuant to Rule 56, "[s]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "A fact is material if—taken as true—it would affect the outcome of the case under governing law." *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

## III. DISCUSSION

### A. FEDERAL CLAIMS VIA 42 U.S.C. § 1983

Plaintiff brings federal constitutional claims via 42 U.S.C. § 1983. He asserts Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution, as well as a Fourteenth Amendment claim for procedural-due-process violations.[3] Defendants argue that all

---

[3]   Plaintiff's Amended Complaint references but does not set forth separate claims under sections 1981 and 1988. In any event, "[s]ection 1988 'does not provide for a separate cause of

of these claims are time-barred by a two-year statute of limitations and that the federal claims should be dismissed with prejudice. After careful review, the Court agrees with Defendants.

Section 1983 provides a cause of action to redress violations of federal law committed by state officials. 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but a method for vindicating those rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). To establish a claim under section 1983, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

When, as here, a defendant challenges the timeliness of section 1983 claims, four questions must be answered: "(1) what law governs the statute of limitations; (2) the length of time provided for by the statute of limitations; (3) what law governs accrual of the cause of action; and (4) when the statute began to accrue for [p]laintiff's claim." *Hassani v. New Jersey*, Civ. No. 21-75, 2022 WL 1291311, at *3 (D.N.J. Apr. 30, 2022) (quoting *Crisdon v. City of Camden*, Civ. No. 11-02087, 2012 WL 685874, at *3 (D.N.J. Mar. 2, 2012)).

As to the first and second questions, because "[a] section 1983 claim is characterized as a personal-injury claim," it is "governed by the applicable state's statute of limitations for personal-injury claims." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010); *accord Ong*

---

action' but only attorney's fees to a plaintiff that prevails under one of the civil rights provisions." *Hoffman v. Warren Cnty. Prosecutor's Off.*, Civ. No. 23-00561, 2023 WL 8271806, at *1 n.2 (D.N.J. Nov. 30, 2023) (quoting *Black v. Allegheny Cnty.*, Civ. No. 13-179, 2014 WL 4415333, at *1 (W.D. Pa. Sept. 8, 2014)). And section 1981 is not the proper mechanism to assert claims for false arrest and imprisonment. (ECF No. 121 ¶ 88 ("The Plaintiff's arrest . . . violated his rights under the Fourth Amendment . . . [and] violated 42 U.S.C. 1981 and 1983.")); *see Victoria v. Anderson*, Civ. No. 23-03765, 2024 WL 772543, at *5 (D.N.J. Feb. 26, 2024) ("Plaintiff brings claims for excessive force, warrantless search, false arrest, and false imprisonment pursuant to 42 U.S.C. § 1981. However, these claims are not properly brought pursuant to Section 1981; rather, they are only proper under Section 1983.").

*v. Hudson Cnty. Superior Ct., New Jersey L. Div. Admin. Off.*, 760 F. App'x 133, 135 (3d Cir. 2018). Here, the statute of limitations for Plaintiff's section 1983 claims is two years because the claims arise in New Jersey and the applicable statute of limitations is two years. *See* N.J. Stat. Ann. § 2A:14-2 (requiring personal-injury claims in New Jersey to be commenced within two years); *see also Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 859-60 (3d Cir. 2014) ("In New Jersey, . . . personal injury claims are governed by a two-year statute of limitations. Consequently, the statute of limitations for . . . a violation . . . under []§ 1983 . . . is two years."); *Dique*, 603 F.3d at 185 ("[A] section 1983 claim arising in New Jersey has a two-year statute of limitations."); *Ong*, 760 F. App'x at 135 ("In New Jersey, § 1983 claims are subject to New Jersey's two-year statute of limitations on personal injury actions."); *Nash v. New Jersey*, Civ. No. 22-01804, 2022 WL 4111169, at *2 (D.N.J. Sept. 8, 2022) ("New Jersey's two-year statute of limitations . . . applies to any claims asserted under 42 U.S.C. § 1983.").

As to the third question, federal law controls when a section 1983 claim accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." (emphasis in original)); *Coello v. DiLeo*, 43 F.4th 346, 352 (3d Cir. 2022) ("We assess this claim-accrual issue by looking to federal law.").

As to the fourth question, under federal law, "a § 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of her injury." *Coello*, 43 F.4th at 352. The federal courts have set some distinct accrual rules for certain section 1983 claims. For claims of false arrest and imprisonment,[4] the statute of limitations "begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397; *Nguyen v. Pennsylvania*, 906 F.3d 271, 273

---

[4] "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace*, 549 U.S. at 388.

7

(3d Cir. 2018) ("For a false arrest, . . . the moment [of accrual is] when legal process justifies the detention or, absent legal process, the moment of release."). For procedural-due-process violations, the limitations period begins when a claimant is on notice of the violations. *See Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014); *Hassani*, 2022 WL 1291311, at *3 ("Procedural-due-process violations: Statute of limitations begins to run when [claimant] became aware of the violations." (citing *Opoku v. Educ. Comm'n for Foreign Med. Graduates*, 574 F. App'x 197, 202 (3d Cir. 2014))). And for malicious prosecution, the limitations period begins "when the criminal proceedings against [a claimant] terminate[] in his favor—that is, when he [is] acquitted at the end of his . . . trial." *McDonough v. Smith*, 139 S. Ct. 2149, 2161 (2019); *see also Randall v. City of Phila. L. Dep't*, 919 F.3d 196, 198 (3d Cir. 2019) ("[F]ederal law holds that a malicious-prosecution claim accrues when criminal proceedings end in the plaintiff's favor.").

Considering this precedent, it is evident that all of Plaintiff's section 1983 claims are time-barred. In the Amended Complaint, Plaintiff alleges that he was falsely arrested on or around March 13, 2016. (ECF No. 121 ¶ 1 ("This is an action to remedy federal . . . civil rights violations . . . committed by the Defendants . . . against the Plaintiff who was . . . falsely arrested on March 13, 2016 . . . .").) Because this action was not filed until July 1, 2019, more than three years after the alleged March 13, 2016 arrest, the false arrest/imprisonment claim is untimely. *See, e.g.*, *Lloyd v. Ocean Twp. Couns.*, 857 F. App'x 61, 64 (3d Cir. 2021) ("Lloyd alleged that her March 6, 2014, arrest was improper and that she was falsely arrested and imprisoned. . . . Accordingly, because the claims were filed in October 2018, well after March 6, 2016, they were time-barred."); *Ong*, 760 F. App'x at 135-36 ("[T]he . . . claims for . . . false imprisonment accrued between May 2012 and December 2013, when they allegedly suffered injuries at the hands of sheriff's officers and became held pursuant to legal process. The [claimants] filed their complaint more than two years

8

later, in October 2016, well after the limitations period expired . . . . The District Court therefore properly concluded that the excessive force and false imprisonment claims were untimely.").

Even if the relevant date of accrual for the false arrest/imprisonment claim were set at some later date than the one pleaded by Plaintiff (*e.g.*, post-summons in July 2016 or post-indictment in September 2016), the claim would still be untimely. Plaintiff was acquitted on June 6, 2017, more than two years before he filed his section 1983 claims in July 2019, and there is no suggestion that Plaintiff was falsely arrested or imprisoned after his acquittal. Similarly, Plaintiff would have, or should have, been aware of any due process violations on or before the date of his acquittal. Therefore, any procedural-due-process claim is time-barred. *See Hassani*, 2022 WL 1291311, at *4 (noting that a claimant knows "about any procedural oddities during his criminal adjudication").

As to the malicious prosecution claim, Plaintiff was acquitted on June 6, 2017. Because he did not assert his claim by June 6, 2019, this claim is untimely as well. *See Lloyd*, 857 F. App'x at 64 ("Lloyd was acquitted on September 2, 2016. Because her claims were not filed by September 2, 2018, they were also not timely."); *Lawson v. City of Vineland*, Civ. No. 22-1002, 2022 WL 16922175, at *2 (D.N.J. Nov. 14, 2022) ("Plaintiff's malicious prosecution claim accrued when he was acquitted on August 3, 2019. Accordingly, the statute of limitations for . . . malicious prosecution expired on August 3, 2021. Plaintiff did not file this complaint until February 10, 2022, well after the limitations period expired.").

Plaintiff argues that the accrual date for his malicious prosecution claim should not be June 6, 2017, which is the date when the trial court found Plaintiff "not guilty" and pronounced that the State had not "met its burden." (ECF No. 128-6 at 191.) Instead, Plaintiff argues that the accrual date should be set about two months later, on July 31, 2017, when the "Judgment of Acquittal"

9

was uploaded on the Superior Court of New Jersey's docket. (ECF No. 130 at 51-52.) Plaintiff cites no legal authority for his position.[5]

The Court concludes that the proper date of accrual is June 6, 2017, when Plaintiff was acquitted by the Superior Court. On that date, Plaintiff obtained a favorable termination of the criminal prosecution and learned that he could pursue a claim for malicious prosecution. The very form judgment of acquittal that Plaintiff tries to use to expand the limitations period states that the case was adjudicated by an acquittal on "6/6/2017," and that, "[o]n June 6, 2017, defendant was found NOT GUILTY at a Non-Jury trial." (ECF No. 130-5 at 2.)

This conclusion is further supported by the United States Supreme Court's decision in *McDonough v. Smith*. 139 S. Ct. 2149 (2019). There, the Court considered when the limitations period for a section 1983 claim based on fabricated evidence should begin to run. *Id.* at 2153. Relying on the rule that applies for malicious prosecution claims, the Court held that "[t]he statute of limitations . . . does not begin to run until the criminal proceedings against the defendant (*i.e.,* the § 1983 plaintiff) have terminated in his favor." *Id.* at 2154-55. The Court explained that this rule "is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *Id.* at 2157. And the Court found that "the criminal proceedings . . . terminated in [the criminal defendant's] favor" on the date "when he was acquitted at the end of his . . . trial." *Id.* at 2161.

Other legal authorities also support the position that a favorable termination occurs when an acquittal is rendered at the end of trial. *See, e.g.*, Restatement (Second) of Torts § 659 (1977) ("Criminal proceedings are terminated in favor of the accused by . . . an acquittal."); *Evans v.*

---

[5] Plaintiff does cite an opinion from the Third Circuit, *Cito v. Bridgewater Twp. Police Dep't*, but this opinion merely holds that there is a two-year period of limitations on section 1983 claims in New Jersey. 892 F.2d 23, 24 (3d Cir. 1989). No accrual issue was raised in that appeal.

*Michigan*, 568 U.S. 313, 318 (2013) ("[O]ur cases have defined an acquittal to encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." (collecting cases)); *Green v. United States*, 355 U.S. 184, 188 (1957) ("[I]t has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy, and even when 'not followed by any judgment, is a bar to a subsequent prosecution for the same offence.'" (quoting *Ball v. United States*, 163 U.S. 662, 671 (1896))); *United States v. Merlino*, 310 F.3d 137, 142 (3d Cir. 2002) ("A 'final judgment' in favor of a criminal defendant is an acquittal . . . ." (citation omitted)).

Here, too, the criminal proceeding against Plaintiff terminated in his favor when the trial court found the State's evidence insufficient, announced the not-guilty verdict, and "acquitted [Plaintiff] at the end of his . . . trial," all of which occurred on June 6, 2017. *McDonough*, 139 S. Ct. at 2161. That is when Plaintiff knew, or should have known, of the favorable termination of the case—starting the clock on his malicious prosecution claim. Critically, Plaintiff has not provided a compelling reason why a different date—about two months later, when the form judgment of acquittal was uploaded on the Superior Court's docket—should supplant the date of acquittal as the accrual date. Plaintiff has not, for example, claimed that he was awaiting the outcome of any post-trial motions or proceeding. Put differently, nothing in the record suggests that Plaintiff had any reason to doubt the favorable nature of the verdict rendered on June 6, 2017.

Finally, despite Plaintiff filing the original Complaint in July 2019 and the Amended Complaint about four years later in June 2023, Plaintiff has not pointed to any facts or circumstances that support equitable tolling of the limitations period. Indeed, "[e]quitable tolling is extraordinary relief, and is appropriate only when: (1) a defendant actively misleads a plaintiff regarding his or her cause of action; (2) a plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) a plaintiff has timely asserted his or her claim

11

in the wrong forum." *Slater v. Metro S. N.J. State Police*, Civ. No. 22-0262, 2023 WL 1818380, at *3 (D.N.J. Feb. 8, 2023) (quoting *Singleton v. DA Philadelphia*, 411 F. App'x 470, 473 (3d Cir. 2011)). And "[a]bsent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Reed v. Davis*, Civ. No. 22-7412, 2023 WL 2524009, at *3 (D.N.J. Mar. 15, 2023) (quoting *Freeman v. State*, 788 A.2d 867, 880 (N.J. Super. Ct. App. Div. 2002)). Here, Plaintiff has not asserted any facts from which the Court could reasonably conclude that equitable tolling would be appropriate. Accordingly, the Court will dismiss the section 1983 claims with prejudice as barred by the two-year statute of limitations. *See Slater*, 2023 WL 1818380, at *4.

### B. REMAINING STATE-LAW CLAIMS

Given the dismissal of the section 1983 claims over which this Court had original jurisdiction, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims.[6] *See Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017) ("A court may [decline supplemental jurisdiction] under 28 U.S.C. § 1367(c)(3) when it dismisses all claims over which it has original jurisdiction."); *see also Artis v. D.C.*, 583 U.S. 71, 74 (2018) ("When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims.").

Because there is nothing in the record to indicate that litigating the state-law claims in state court would be inconvenient, the Court has not expended resources considering the merits of the state-law claims, and the courts of New Jersey have a strong interest in deciding issues of state law

---

[6] Because Plaintiff and Defendants are citizens of New Jersey, there is no basis for diversity jurisdiction. (ECF No. 121 ¶¶ 9-25.)

and public policy, the Court will dismiss Plaintiff's state-law claims without prejudice to them being refiled in state court.[7] *See, e.g., Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 135 (3d Cir. 2019) (affirming district court's discretion to decline supplemental jurisdiction over state law claim after summary judgment on federal claim); *Yue Yu v. McGrath*, 597 F. App'x 62, 68 (3d Cir. 2014) ("[T]he District Court dismissed all of the remaining state and common law claims after awarding summary judgment to Defendants on all of the federal claims over which it had original jurisdiction. It was within the District Court's discretion to do so . . . ."); *Burnsworth v. PC Lab'y*, 364 F. App'x 772, 776 (3d Cir. 2010) (same). The Court does not reach Defendants' arguments as to why the state-law claims may be subject to dismissal.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss or for Summary Judgment are **GRANTED** in part and **DENIED** in part. An appropriate Order follows.

Dated: March 27, 2024

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

---

[7]   *See Artis*, 583 U.S. at 76 ("If a district court declines to exercise jurisdiction over a claim asserted under § 1367(a) and the plaintiff wishes to continue pursuing it, she must refile the claim in state court.").

13